IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| MATTHEW GANNAWAY and JESSICA GANNAWAY, individually and as next friends and parents to ETHAN GANNAWAY, | ) | |
| Plaintiffs, | ) | CIVIL NO. 4:14-CV-00355 |
| vs. | ) | |
| GRINNELL-NEWBURG SCHOOL DISTRICT, JEFF KIRBY, TODD ABRAHAMSON, and NIKKI TEWS, | ) | |
| Defendants. | ) | |

BEFORE THE COURT is a motion to dismiss or stay, filed by defendants Grinnell-Newburg School District, ("the school district"), Jeff Kirby, Todd Abrahamson and Nikki Hews on December 15, 2014. Plaintiffs Matthew and Jessica Gannaway resisted the motion on February 24, 2015. The motion is fully submitted.[1]

## I. BACKGROUND

### A. Underlying Facts

The following facts are accepted as true as alleged in the complaint. *See, e.g., Hager v. Ark. Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013) (outlining standards for review of 12(b)(6) motions to dismiss). Plaintiffs Matthew and Jessica Gannaway are residents of Grinnell, Iowa. At all times relevant to this action, the plaintiffs' son, Ethan, was a third grade

---

[1] Defendants have requested oral argument on their motion. After reviewing the pleadings and applicable law, however, the Court finds that oral argument is unnecessary to the disposition of the motion.

student at Davis Elementary School in the defendant school district. During the same time period, defendant Todd Abrahamson served as the superintendent of the school district; defendants Jeff Kirby and Nikki Tews were the principal and school counselor, respectively, of Davis Elementary School.

Ethan Gannaway suffers from cyclic vomiting syndrome, a life-threatening condition that can be triggered by stress, fear and anxiety. At some time prior to September 26, 2012, Ethan was bullied and called names by another boy at Davis Elementary School. When Matthew Gannaway picked Ethan up from school on September 26, Ethan was physically and emotionally distraught as a result of the bullying.

The following morning, Matthew went to meet with Kirby, the school principal, to report the conduct. During the course of the meeting, Kirby told Matthew that Ethan should discuss incidents of bullying with his teacher, not the principal. Kirby then sent Matthew and Ethan out to the playground to identify the bully. Ethan pointed out a child on the playground. The child at issue told Matthew that his name was “Cody.”

The school was unable to confirm the enrollment of a “Cody” at Davis Elementary School. Matthew then sent an e-mail to Ethan’s teacher requesting that she meet with him on the playground the following morning in another attempt to identify the bully. The teacher forwarded Matthew’s e-mail to Kirby, who subsequently called Matthew and told him “we have a problem.” Kirby told Matthew he did not like the tone of Matthew’s e-mail to Ethan’s teacher, and denied the request to try again to identify the bully.

The following morning, Matthew called the school district offices in an attempt to discuss the matter with defendant Abrahamson, district superintendent. Matthew’s call was

diverted to Abrahamson's voice-mail, and the call never was returned. Upon learning that Matthew had contacted Abrahamson, Kirby pulled Ethan out of class to briefly and unsuccessfully search the fourth grade lunch recess for the bully. When no such child was identified, Kirby took Ethan to his office.

Kirby then yelled at Ethan and forced him to repeat the phrase, "I will not lie again," several times. Kirby called Matthew and told him he had "broken down" Ethan's story and found some "discrepancies in the timeline." During the conversation, Matthew heard Ethan crying in the background, and drove to the school to check on his son. After waiting at the door for ten minutes to be let into the building, Matthew walked immediately to Kirby's office and told Kirby he was taking his son home. Matthew also asked Kirby why Ethan was crying, and Kirby responded that Ethan was afraid he was "going to get in trouble at home for lying."

When Matthew and Ethan arrived at home, Ethan began an episode of cyclic vomiting. Matthew called Abrahamson for a second time, and was again diverted to voice-mail. Matthew then sent an e-mail to Ethan's teacher, Kirby, Tews and Abrahamson indicating that he did not want Ethan meeting with school officials without a parent present.

Over the weekend, Ethan was depressed, distant, physically sick and continued to suffer cyclic vomiting syndrome. On Tuesday, October 2, 2012, Ethan returned to school and went to see Tews, the school counselor, to see if she could help him find the bully. Tews took Ethan to the playground, and Ethan identified the child. Despite Ethan's identification, Tews took Ethan back to her office, and informed him that "there were little problems and there were big problems," and that the "big problem here was that Ethan was a liar and had lied."

Ethan's cyclic vomiting syndrome subsequently worsened, and he told his father he was

afraid to go to school. Matthew then placed a third phone call to Abrahamson, and was once again transferred to voice-mail. Matthew then sent an e-mail to Bryan Darnall of the Iowa Department of Education ("IDOE").

On October 3, 2012, Nicole Proesh of the IDOE responded to Matthew's e-mail, and indicated that plaintiff should first work with the school district's board to resolve his son's issues. She copied Abrahamson in her response. Abrahamson then called Matthew and said he had been "investigating the whole time."

After receiving Proesh's e-mail, Matthew contacted several members of the school board. A meeting was set up for October 10, 2012, with Matthew and Jessica, Abrahamson, Jeff Smith, Doug Cameron and Barbara Cobb, Ethan's grandmother.

Between October 4, 2012 and October 10, 2012, Ethan was constantly vomiting, and appeared very anxious and nervous. He missed a significant amount of school during this time period. On October 9, 2012, Ethan told his mother that he hoped Kirby would not be at the meeting, because "he is a mean man" and Ethan did not want Kirby to "hurt mommy like he hurt [him]".

As a result of the October 10, 2012, meeting, a multi-step plan was created to help Ethan. The plans steps included: 1) contacting the Area Education Agency ("AEA") to help Ethan; 2) developing a 504 plan; 3) having a counselor from another school come to talk with Ethan; 4) arranging privately-proctored tests for Ethan; 5) providing soy milk at school for Ethan; 6) arranging for one of the board members to contact a child psychologist to assist the family, and 7) ensuring that Kirby had no contact with Ethan. Of these seven steps, only steps 4 and 5 were completed by defendants. Matthew and Jessica contacted the child psychologist on their own,

and the AEA declined to help Ethan as proposed in step one.

Moreover, Kirby continued to have contact with Ethan. He would repeatedly walk by Ethan and stare at him, and, on one occasion, sat silently next to Ethan while Ethan waited to be picked up from school.

Between October 10, and 20, 2012, Ethan attended only two days of school, and continued to suffer from severe emotional and physical distress. He also began to see a private counselor.

On October 31, 2012, Matthew and his sixteen-month-old child went to the school district's central offices to speak with Abrahamson about the failure to implement the multi-step plan. Abrahamson saw Matthew enter the central offices, and immediately called the police.

Over the course of the next two days, Abrahamson and the school district arranged for the police to serve two separate criminal trespass notices on Matthew, forbidding him from being on any school property, and preventing him from attending Ethan's parent-teacher conferences. There is no indication that Matthew had made any type of threat, or engaged in threatening behavior that would warrant such notices.

Plaintiffs immediately removed Ethan from school, and sought to open enroll all of their children into the East Marshall School District. Abrahamson refused to sign the open enrollment forms for the Gannaway children, however, and turned the matter over to the school board. Ultimately, the school board voted to sign the forms, enabling the Gannaway children to start school in the East Marshall School District on November 19, 2012.

B. Procedural History

On January 22, 2013, plaintiffs filed a seven-count petition in the Iowa District Court for

Poweshiek County against the same defendants named in the present action. Count one of the state court petition alleges defendants' conduct constituted bullying, and created an objectively hostile school environment in violation of Iowa Code § 280.28. Count two sets forth a cause of action under Article I, § 9 of the Iowa Constitution for procedural and substantive due process violations. Count three alleges defendants' actions violated plaintiffs' right to equal protection guaranteed by Article I, § 6 of the Iowa Constitution. Count four claims defendants breached their fiduciary duty to plaintiffs to care for the well being of Ethan while he was on school grounds. Count five sets forth a common law cause of action for tortious infliction of severe emotional distress. Count six alleges defendants Kirby and Tews committed professional negligence in their actions toward Ethan, and count seven sets forth a cause of action against all defendants for abuse of process.

Discovery commenced, and on May 15, 2014, defendants moved for summary judgment with regard to all claims. On August 25, 2014, Iowa District Judge Annette Scieszinski issued a seventeen-page order granting defendants' motion as to plaintiffs' claims for due process and equal protection violations under the Iowa Constitution, tortious infliction of emotional distress and abuse of process. Plaintiffs' claims of statutory bullying, breach of fiduciary duty and negligence remain pending.

Plaintiffs filed the present complaint in this Court on September 9, 2014, alleging that defendants' conduct violated plaintiffs' procedural and substantive process rights under the Fourteenth Amendment to the United States Constitution (count I). They also claim that defendants deprived them of their right to equal protection, also guaranteed by the Fourteenth Amendment (count II). Defendants now move to dismiss both counts, arguing they are barred

by the doctrine of *res judicata*. Alternatively, defendants urge the Court to abstain from hearing this case under the *Colorado River* doctrine and either dismiss or stay the proceedings pending resolution of the state court action.

## II. APPLICABLE LAW AND DISCUSSION

### A. Law Governing Motions to Dismiss

A district court may dismiss a complaint if it fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). For the purposes of this motion, the Court accepts as true all of the facts alleged in plaintiff's complaint, and may "dismiss the case only when 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Casazza v. Kiser*, 313 F.3d 414, 418 (8th Cir. 2002) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). The Eighth Circuit has stated that "[a] motion to dismiss should be granted . . . only in the unusual case in which a plaintiff includes allegations that show, on the face of the complaint, that there is some insuperable bar to relief." *Strand v. Diversified Collection Serv., Inc.*, 380 F.3d 316, 317 (8th Cir. 2004) (internal quotations omitted).

### B. Whether Plaintiff Has Alleged a Violation Under 42 U.S.C. § 1983

Defendants first argue that plaintiffs have inappropriately pled their due process claims directly under the Fourteenth Amendment, rather than under 42 U.S.C. § 1983. This Court does not agree.

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see also Hamilton v. Palm*, 621 F.3d 816, 817 (8th Cir. 2010) (citing Rule 8(a)(2). Under the notice

pleading standard, "the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (additional internal citation omitted).

As noted by plaintiffs in their resistance brief, paragraph one of plaintiffs' complaint expressly states: "This is an action under 42 U.S.C. § 1983 and pursuant to the United States Constitution, challenging the Defendants' violation of Plaintiffs' Constitutional rights." Complaint, at ¶ 1. Clearly, this statement provides defendants with "fair notice" that plaintiffs are raising claims pursuant to § 1983, which ultimately are grounded upon the United States Constitution. *See, e.g., Wax 'n Works v. City of St. Paul,* 213 F.3d 1016, 1019 (8th Cir. 2000) (treating Fourteenth Amendment procedural due process claim as appropriately pled under § 1983, "since the claim may not be brought directly under the fourteenth amendment").

The fact plaintiffs do not again reference § 1983 in the substantive counts is not determinative, since each count describes with sufficient detail defendants' allegedly wrongful conduct, and the Constitutional right sought to be enforced.

C. Whether Plaintiffs' Claims Barred by *Res Judicata*

Defendants next contend that plaintiffs have already litigated their due process and equal protection claims in state court, and are thus barred from bringing them in this Court under the doctrine of *res judicata*. The law of the forum that entered the first judgment, in this case, Iowa, governs the *res judicata* analysis. *Laase v. Cnty of Isanti*, 638 F.3d 853, 856 (8th Cir. 2011) (internal quotation and citation omitted). Under Iowa law, "[t]he doctrine of res judicata includes both claim preclusion and issue preclusion." *Pavone v. Kirke*, 807 N.W.2d 828, 835 (Iowa 2011) (citing *Bennett v. MC #619, Inc.*, 586 N.W.2d 512, 516 (Iowa 1998)). Defendants

argue that both claim and issue preclusion are applicable in the present case.

1. Whether Claims Barred by Claim Preclusion

> The general rule of claim preclusion holds that a valid and final judgment on a claim bars a second action on the adjudicated claim or any part thereof. *Arnevik v. Univ. of Minn. Bd. of Regents*, 642 N.W.2d 315, 319 (Iowa 2002). "Therefore, a party must litigate all matters growing out of the claim, and claim preclusion will apply 'not only to matters actually determined in an earlier action but to all relevant matters that could have been determined.'" *Penn v. Iowa State Bd. of Regents*, 577 N.W.2d 393, 398 (Iowa 1998) (quoting *Shumaker v. Iowa Dep't of Transp.*, 541 N.W.2d 850, 852 (Iowa 1995)).

*Pavone*, 807 N.W.2d at 835. Claim preclusion will not apply, however, "'unless the party against whom preclusion is asserted had a full and fair opportunity to litigate the claim or issue in the first action.'" *Id.* at 836 (quoting *Arnevik*, 642 N.W.2d at 319) (additional quotations and citation omitted).

To establish claim preclusion in the present case, defendants must show: 1) the parties in the state action are the same or in privity with the parties in the present action; 2) there was a final judgment on the merits in the state action; and 3) the claims raised in the present action could have been "fully and fairly adjudicated" in the state action. *Pavone*, 807 N.W.2d at 836 (citing *Arnevik*, 642 N.W.2d at 319). In the present case, plaintiffs do not dispute that the parties are "nearly identical," and that the summary judgment ruling constituted a "final judgment." They do dispute, however, whether the claims raised in this Court were or could have been "fully and fairly adjudicated" in the state action.

Ordinarily, in determining whether a claim in a second litigation "could have been fully and fairly adjudicated in the prior case," the Court must consider three factors: 1) the protected right; 2) the allegedly wrongful conduct; and 3) the relevant evidence. *Pavone*, 807 N.W.2d at 837 (citations omitted). Here, however, there is no dispute that the allegedly wrongful conduct

and the relevant evidence is identical in both the state and federal case. Nor do plaintiffs appear to dispute that the rights involved in both actions derive from the same basic principles–the right to enjoy due process and equal protection under the law. Rather, in arguing against the application of claim preclusion, plaintiffs argue that a potential procedural hurdle involving the state claims might impact their ability to successfully bring the claims in *either* court. According to plaintiffs, an issue exists as to whether due process and equal protection claims *may even be raised* under the Iowa Constitution, since no state analogue to § 1983 exists.

Clearly, however, this alleged procedural bar did not prejudice them in the state proceeding. A review of Judge Scieszinski's order confirms she issued her ruling on the merits of plaintiffs' State Constitutional claims. With regard to plaintiffs' claims for deprivation of procedural and substantive due process, Judge Scieszinski found that neither a liberty nor a property interest was implicated by the allegations raised, and that Ethan did not have a right under the Iowa Constitution to attend Davis Elementary School. *Gannaway v. Grinnell-Newburg Comm. Sch. Dist.*, No. LALA 002084 (Iowa, Powesheik County), Aug. 22, 2014 Summary Judgment Ruling ("State Summary Judgment Ruling"), at 6. Despite this threshold conclusion, Judge Scieszinski nevertheless went on to complete a full evaluation of both the substantive and procedural due process claims, and concluded that the factual allegations did not warrant relief under either state or federal precedent. *Id.* at 7-8. In evaluating plaintiffs' equal protection claim, Judge Scieszinski first determined that there was no "suspect class at issue . . . [nor] fundamental right in question," thus implicating review under a "rational basis" analysis. *Id.* at 9. Next, Judge Scieszinski noted there was no evidence of disparate treatment of similarly situated individuals either during the school's investigation of Ethan's complaint of playground

bullying or during the administration's allegedly bullying conduct. *Id.* at 9-10. Accordingly, Judge Scieszinski concluded there was "no proof that the School's actions that the Gannaways find offensive had no rational basis in orderly and safe school administration." *Id.* at 10.

Notably, Iowa courts employ the same legal analysis to evaluate due process and equal protection claims under the Iowa Constitution as that used for claims under the Federal Constitution. *See, e.g., State v. Seering*, 701 N.W.2d 655, 662 (Iowa 2005) (indicating that state and federal due process provisions are "nearly identical in scope, import and purpose," and that courts "typically interpret both in a similar fashion") (citations omitted); *Johnson v. Univ. of Iowa*, 408 F. Supp.2d 728, 749-50 (S.D. Iowa 2004) ("As a general rule, the Iowa Supreme Court follows federal equal protection analysis when construing the Iowa Equal Protection Clause.").[2] Even assuming the analytical framework was different for the state claims than for the federal claims, however, it is well settled that state courts exercise concurrent jurisdiction to hear claims alleging federal constitutional violations brought under § 1983. *See, e.g., Harrington v. Schossow*, 457 N.W.2d 583, 585 (Iowa 1990) (citing *Maine v. Thibotot*, 448 U.S. 1, 3 n.1 (1980)). Because their federal and state claims arose from a common nucleus of operative facts, plaintiffs could and should have brought their federal due process and equal protection claims in the state court action. The Court therefore concludes that the doctrine of

---

[2] As recently acknowledged in *Godfrey v. Branstad*, No. 4:13-cv-00042-JEG, 2014 WL 5471720, at *4 n.4 (S.D. Iowa June 27, 2014), the Iowa Supreme Court "jealously reserve[s] the right to develop an independent framework under the Iowa Constitution." (Quoting *NextEra Energy Res., LLC v. Iowa Utils. Bd.*, 815 N.W.2d 30, 45 (Iowa 2012)) ("Even in cases where a party has not suggested that our approach under the Iowa Constitution should be different from that under the Federal Constitution, we reserve the right to apply the standard in a fashion at variance with federal cases under the Iowa Constitution.") (internal citations omitted). To date, however, neither the Iowa Supreme Court nor the Iowa Court of Appeals has strayed from the federal framework in evaluating a claim based on an Iowa Constitutional provision.

claim preclusion prevents them from a "second bite at the apple" in this Court. *See Sparkman Learning Center v. Arkansas Dep't of Human Servs.*, 775 F.3d 993, 1000 (8th Cir. 2014) (plaintiff's failure to raise federal equal protection claim at state administrative level barred attempt to bring claim in federal court, based on fact "it could have been brought before the state courts if initially raised in the administrative process"); *see also Godfrey v. Branstad*, No. 4:13-cv-00042-JEG, 2014 WL 5471720, at *4 (S.D. Iowa June 27, 2014) (noting that if Iowa court rendered final judgment on the merits with regard to parallel state due process and equal protection claims, such judgment likely would be binding in the federal court action).

2. Whether Claims Barred by Issue Preclusion

In addition to claim preclusion, defendants contend plaintiffs' federal claims also are barred by issue preclusion, or collateral estoppel. This doctrine "prevents a party to a prior action in which a judgment has been rendered from re-litigating in a subsequent action issues raised and resolved in the previous action." *Penn*, 577 N.W.2d at 398.

Under Iowa law, a subsequent court will give a final determination regarding issues of fact preclusive effect if: 1) the relevant issues presented in both cases are identical; 2) the issues were both raised and litigated in the prior action; 3) the issues were material and relevant to the disposition of the prior claim; and 4) a determination of the issues was essential to the resulting judgment in the prior action. *Employers Mut. Cas. Co. v. Van Haaften*, 815 N.W.2d 17, 22 (Iowa 2012). In addition to these four elements, the court must also consider whether the opposing party was given a "full and fair opportunity to litigate the issues" in the prior action, and "whether any other circumstances are present that would justify granting the party resisting issue preclusion occasion to relitigate the issues." *Id.* (internal quotations and citations omitted).

The first four elements easily are satisfied in the present case. As with their claim under the Iowa Constitution, plaintiffs' ability to establish a procedural due process violation under the Fourteenth Amendment depends on their ability to show a protected property or liberty interest. *See, e.g.*, *State v. Seering*, 701 N.W.2d at 665 ("[T]he first step in any procedural due process inquiry [under both the state and federal constitutions] is the determination of whether a protected liberty or property interest is involved."). Similarly, plaintiffs' substantive due process claims under both state and federal law also turns on whether "a fundamental right is implicated." *Id.* at 662. Under both Constitutions, if a fundamental right is at issue, the Court will apply a strict scrutiny analysis to evaluate the alleged government conduct. *Id.* If not, the government action "need only survive a rational basis analysis." *Id.* Lastly, an equal protection claim brought under the Iowa Constitution requires consideration of the same basic issues as a parallel Fourteenth Amendment claim–whether "similarly situated" persons are treated in a disparate manner, and if so, whether such treatment is justified under the appropriate level of scrutiny. *See, e.g., NextEra Energy Resources LLC v. Iowa Utilities Bd.*, 815 N.W.2d 30, 45 (Iowa 2012) (evaluating equal protection claim raised under the Iowa Constitution using "established federal equal protection principles").[3] As set forth above, Judge Scieszinski evaluated the issues underlying all three state claims on the merits, and determined as a matter of law that none could withstand summary judgment.

With regard to the final two considerations, the record shows Judge Scieszinski entered

---

[3] Specifically, a court will apply strict scrutiny to "'classifications based on race, alienage, or national origin and those affecting fundamental rights[;]'" intermediate scrutiny to legislative classifications based on gender, illegitimacy or sexual orientation; and a "rational basis analysis" to the remaining classifications. *NextEra Energy Resources*, 815 N.W.2d at 45 (quoting *Varnum v. Brien*, 763 N.W.2d 862, 879-896 (Iowa 2009)).

her summary judgment ruling after a full hearing conducted with benefit of discovery. Plaintiffs cannot deny they were given a "full and fair opportunity" to litigate the issues. The Court is likewise unaware of any other circumstances that could justify re-trying the issues in this Court. *Employers Mut. Cas. Co. v. Van Haaften*, 815 N.W.2d at 22.

Plaintiffs' sole argument against the application of issue preclusion is that the state court disposed only of the claims grounded on the Iowa Constitution–not their federal counterparts. According to plaintiffs, the fact that Judge Scieszinski relied upon the federal legal framework in doing so is irrelevant.

Plaintiffs' argument is misguided. Under the current state of Iowa law, the pertinent *issues* involved in due process and equal protection claims raised under the Iowa Constitution are virtually identical to those grounded in the Fourteenth Amendment. The Court therefore concludes that the doctrine of issue preclusion prevents plaintiffs from re-litigating "issues raised and resolved in the previous action." *Penn*, 577 N.W.2d at 398.

D. Alternative Motion to Stay Based on Abstention

Having concluded that plaintiffs are barred from bringing their Federal Constitutional claims on *res judicata* grounds, the Court need not consider their alternative motion to stay.

## III. CONCLUSION

For the reasons outlined above, defendants' motion to dismiss is granted. The Clerk of Court is directed to enter judgment in favor of defendants and against plaintiffs.

IT IS ORDERED.

Dated this 29th day of April, 2015.

RONALD E. LONGSTAFF, Senior Judge
United States District Court